```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
GM, a minor, by his parent and
natural guardian, DM,

                Plaintiff,
                                              MEMORANDUM & ORDER
        -against-                             14-CV-4126(JS)(ARL)

MASSAPEQUA UNION FREE SCHOOL
DISTRICT, MASSAPEQUA UNION FREE
SCHOOL DISTRICT BOARD OF EDUCATION,
MARIA HABER, individually and in her
official capacity, AMANDA LOWRY,
individually and in her official
capacity, DIANE SALES, individually
and in her official capacity, DOROTHY
AHL, individually and in her official
capacity, CHARLES SULC, individually
and in his official capacity, and
LUCILLE ICONIS, individually and in
her official capacity,

                Defendants.
----------------------------------------X
```
APPEARANCES
For Plaintiff:       Steven A. Morelli, Esq.
                     The Law Offices of Steven A. Morelli, P.C.
                     1461 Franklin Ave.
                     Garden City, NY 11530

For Defendant
Haber:               Lewis R. Silverman, Esq.
                     Silverman & Associates
                     445 Hamilton Ave, Ste. 1102
                     White Plains, NY 10601

For the Supervisor
Defendants:          Steven C. Stern, Esq.
                     Susan Hull Odessky, Esq.
                     Sokoloff Stern LLP
                     179 Westbury Ave.
                     Carle Place, NY 11514

SEYBERT, District Judge:

Plaintiff GM, a minor, by his parent and natural guardian, DM ("Plaintiff"), commenced this action against defendants Massapequa Union Free School District (the "District"), Massapequa Union Free School District Board of Education (the "Board"), Maria Haber ("Haber"), Amanda Lowry ("Lowry"), Diane Sales ("Sales"), Dorothy Ahl ("Ahl"), Charles Sulc ("Sulc"), and Lucille Iconis ("Iconis," and together with Lowry, Sales, Ahl, Sulc, the District, and the Board, the "Supervisor Defendants"), alleging, inter alia, that GM was (1) unlawfully seized in violation of the Fourth Amendment, U.S. CONST. amend. IV, (2) discriminated against based on his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 et seq., and the United States Constitution; and (3) subjected to various state-law torts. Pending before the Court are Haber's and the Supervisor Defendants' respective motions to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entries 12, 15.) For the following reasons, both motions are GRANTED.

BACKGROUND[1]

GM, a thirteen year-old[2] boy diagnosed with attention deficit hyperactivity disorder ("ADHD"), is a student at the McKenna Elementary School, a facility within the District. (Compl., ¶¶ 7, 10.) Although the Complaint does not describe the full reaches of GM's disability, it does explain that his disability sometimes leads to uncontrollable fidgeting. (Compl. ¶ 41.) GM also exhibits certain "ticks" when he is stressed or nervous; he chews his shirt sleeve, pulls his hair out, and licks his fingers. (Compl. ¶ 19.) He also has some difficulty keeping up with assignments. (Compl. ¶ 45.) DM explains that by mishandling GM's disability, Defendants thwarted his efforts toward a productive education. (Compl. ¶ 47.)

GM's troubles at school began in January 2011, when Haber began teaching his fourth-grade class. (Compl. ¶ 18.) The Complaint alleges that Haber would routinely discipline GM for "actions that were the uncontrollable byproduct of his disability." (Compl. ¶ 27.) Haber's key disciplinary measure involved segregating GM from the class by sending him to a back

---

[1] The following facts are drawn from the Complaint and are assumed true for the purposes of these motions.

[2] The Complaint is unclear as to GM's age at the time of the filing; some allegations describe him as twelve, (Compl. ¶ 1), others thirteen (Compl. ¶ 7). Either way, the Court's analysis is the same.

3

room of the classroom. (Compl. ¶¶ 28, 29.) The room had a window, and it contained school and kitchen supplies. (Compl. ¶ 30.) While in that room, GM could not see the chalkboard or otherwise participate in class. (Compl. ¶ 30.) Haber did not assign GM separate work when she sent him to the storage room; her only instructions were to "have fun." (Compl. ¶ 31.) Haber sent GM to this storage room multiple times per week, sometimes every day, and sometimes multiple times per day. (Compl. ¶ 29.) The duration of his trips to the back room is not alleged.

In March 2011, DM learned that her son was being disciplined with trips to the back room. (Compl. ¶ 39.) DM first brought the matter to the attention of the School's Principal Amanda Lowry and school psychologist Dorothy Ahl, but neither took action. (Compl. ¶ 43.) She then contacted the Superintendent of the District, Charles Sulc, who ignored DM's calls. (Compl. ¶ 48.) Finally, DM wrote to the Board, but they too failed to respond. (Compl. ¶¶ 48, 50.)

The following academic year, GM was elected to a student council position. (Compl. ¶ 51.) At some point, Defendants divested GM of his position as a disciplinary measure. (Compl. ¶ 52.) Though the Complaint alleges GM was targeted, it is entirely devoid of any circumstances surrounding this event, including who stripped GM of his position or what GM did to warrant such a punishment. (Compl. ¶ 52.)

4

During GM's sixth-grade year (2012-2013), he continued to receive detention "for problems associated with his disability." (Compl. ¶ 55.) Additionally, DM repeatedly requested that Defendants provide GM with constant adult supervision so that he would not be bullied by other students. (Compl. ¶¶ 72, 83.) Defendants provided no such supervision, and as a result, other students frequently bullied GM. (Compl. ¶¶ 56-82.) The Complaint recounts a number of instances where GM was bullied both verbally and physically by other students, and it alleges that the bullying was a direct result of Defendants' failure to provide the added adult supervision. (Compl. ¶¶ 73, 83.) Students who bullied GM were allegedly either not disciplined at all or not sufficiently disciplined. (Compl. ¶¶ 59, 66, 69, 81.)

As a result of GM's alleged mistreatment, DM brings eight causes of action on his behalf: (1) a claim for disability discrimination in violation of the NYSHRL; (2) a Section 1983 claim for unlawful seizure in violation of the Fourth Amendment; (3) a Section 1983 action for violation of GM's Fourteenth Amendment right to due process; (4) a Section 1983 action for violation of GM's right to equal protection; (5) a claim of disability discrimination in violation of the ADA; (6) a claim for negligent hiring and administration of discipline; (7) a claim for negligence per se; and (8) a claim for negligent infliction of emotional distress. For simplicity's sake, the Court refers to Plaintiff's

first, sixth, seventh, and eight causes of action as the "State Claims," and second, third, fourth, and fifth causes of action as the "Federal Claims."

DISCUSSION

The Court first considers whether it has subject matter jurisdiction over Plaintiff's claims. Because it concludes that it lacks subject matter jurisdiction over Plaintiff's Federal Claims and declines to exercise its supplemental jurisdiction over Plaintiff's State Claims, the Court does not reach the merits of Defendants' 12(b)(6) arguments.

I. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings. See Morrison v. Nat'l Austl. Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008). Though the Court must accept the factual allegations contained in the Complaint as true, it will not draw argumentative inferences in favor of Plaintiff; subject matter jurisdiction must be shown affirmatively. See id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d

Cir. 1998). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.

II. Federal Claims

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., endeavors to provide disabled students with a free appropriate public education, and it establishes a series of administrative avenues to remedy any interference with that endeavor. As used here, the term "education" encompasses more than simply academics. Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 248 (2d Cir. 2008) (internal quotation marks and citation omitted). Thus, parents are entitled to "present a complaint with respect to any matter relating to the identification, evaluation, or education placement of the child, or the provision of free appropriate public education to such child." 20 U.S.C § 1415(b)(6)(A) (emphasis added).

In addition to establishing various administrative remedies, the IDEA divests federal courts of subject matter jurisdiction over claims asserted by plaintiffs who have not first exhausted those remedies.[3] 20 U.S.C. § 1415(i)(2)(A); see also,

---

[3] Although other Circuits have held that a failure to exhaust administrative remedies under the IDEA does not divest a court of subject matter jurisdiction, but instead is an affirmative defense, the Second Circuit had refused to do so. See Cave, 514 F.3d at 245; Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. Appx. 131, 134 (2d Cir. 2012) ("The District Court's

7

e.g., Cave, 514 F.3d at 245. "The purpose of the exhaustion rule is to 'channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.'" Id. at 245-46 (quoting Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 487 (2d Cir. 2002)); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 873 F.2d 933, 935 (6th Cir. 1989) (discussing the IDEA's predecessor, the Education for All Handicapped Children Act, and explaining, "Federal courts--generalists with no expertise in the educational needs of handicapped students--are given the benefit of expert factfinding by a state agency devoted to this very purpose.").

Even where a plaintiff's causes of action arise from sources other than the IDEA, such as the ADA or the Constitution, the IDEA's exhaustion requirement applies if those claims "assert claims for relief available under the IDEA." Cave, 514 F.3d at 246 (emphasis in original) (applying exhaustion requirement to ADA claim); In re Intravaia v. Rocky Point Union Free Sch. Dist., 919 F. Supp. 2d 285, 292 (E.D.N.Y. 2013) (applying exhaustion requirement to claim arising under 42 U.S.C. § 1983); see also 20 U.S.C. § 1415 ("Nothing in [the IDEA] shall be construed to

---

holding that the plaintiffs' failure to exhaust the IDEA's administrative remedies required dismissal of their complaint was clearly compelled by our Circuit precedent.").

8

restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].").

The Second Circuit has repeatedly emphasized the breadth of the IDEA's exhaustion requirement. For example, in Cave, the Second Circuit directed dismissal of an ADA claim based upon a school's refusal to allow a hearing-impaired student to bring his service dog to school. 514 F.3d at 248. The Second Circuit held that the plaintiff's ADA claims were subject to the IDEA's exhaustion requirement because they were "not entirely beyond the bounds of the IDEA's educational scheme." Id. In Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 496 (S.D.N.Y. 2011), the court held that a student's ADA claim that his teacher was deliberately hostile to him based upon his disability was subject to the IDEA's exhaustion requirement. A three-judge panel of the Second Circuit affirmed, explaining, "[t]he District Court's holding that the plaintiffs' failure to exhaust the IDEA's administrative remedies required dismissal of their complaint was clearly compelled by our Circuit precedent."

In re Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x at 134.

Plaintiff does not allege the satisfaction of the administrative requirements of the IDEA. Nor does he argue that any exception to this exhaustion requirement is applicable. As a consequence, whether the Court has subject matter jurisdiction over Plaintiff's Federal Claims turns on whether they are subject to the exhaustion requirement of the IDEA.

Plaintiff's Federal Claims are subject to the IDEA's exhaustion requirement because they indisputably relate to and are inextricably intertwined with GM's access to a free appropriate public education. That Haber inappropriately disciplined the uncontrollable side effects of GM's disability, or that she employed teaching and disciplinary measures that exacerbated, rather than accommodated GM's disability are issues falling squarely within the province of the IDEA. See In re Baldessarre, 496 F. App'x at 134; Intravaia, 919 F. Supp. 2d at 289, 292 (allegations that student was punished for her disability subject to exhaustion requirement. Likewise, the Supervisor Defendants' alleged failure to provide GM with additional adult supervision--which resulted in his being bullied by other students--is another alleged impediment to GM's entitlement to a free appropriate public education subject to the IDEA's exhaustion requirement. See, e.g., T.K. v. N.Y.C. Dep't of Educ., 779 F. Supp. 2d 289, 312 (E.D.N.Y.

2011) (allegations that school failed to prevent disabled student's bullying subject to the IDEA's exhaustion requirement); Wang v. Williamsville Cent. Sch. Dist., No. 08-CV-0575, 2010 WL 1630466, at *1 (W.D.N.Y. Apr. 21, 2010) (same). In short, none of Plaintiff's Federal Claims are "entirely beyond the bounds of the IDEA's educational scheme," and they are therefore subject to the requirement of administrative exhaustion.[4] See Cave, 514 F.3d at 248.

To cement its conclusion that Plaintiff's Federal Claims all arise from conduct addressable under the IDEA, the Court need look no further than paragraph eighty-three of the Complaint. There, Plaintiff summarizes the basis of the Federal Claims: "Defendants failed to provide [GM] with additional adult supervision, preferential seating, and modified assignments. As a result of their failure to provide GM with these services he has been subject to multiple instances of harassment and bullying by teachers, students, and administrators." (Compl. ¶ 83.) Later, the Complaint explains that Defendants classified issues

---

[4] That Plaintiff here seeks monetary damages--a form of relief unavailable under the IDEA--does not vitiate the requirement of administrative exhaustion. See Polera, 288 F.3d at 488 ("'[T]he theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply'" (quoting Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 991 (7th Cir. 1996))).

associated with GM's disability as "behavioral" issues, in order "to avoid paying for the proper servies [sic]." (Compl. ¶ 86.) These allegations make clear that Plaintiff's suit challenges the adequacy of the accommodations provided to a disabled student and--perhaps particularly in GM's case--the often unfortunate and disconcerting consequences thereof. This sort of challenge "provides a textbook example of the types of cases justifying administrative exhaustion." Hope v. Cortines, 872 F. Supp. 14, 21 (E.D.N.Y.), aff'd, 69 F.3d 687 (2d Cir. 1995)

Accordingly, Plaintiff's Federal Claims are DISMISSED for lack of subject matter jurisdiction.

III. State Claims

Having found that the Court lacks subject matter jurisdiction over Plaintiff's Federal Claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's State Claims. See 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's State Claims are DISMISSED WITHOUT PREJUDICE to refiling in the appropriate court.

CONCLUSION

For the foregoing reasons, both the motion of defendant Haber to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry 12) and the motion of the Supervisor Defendants to dismiss the Complaint for

lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules 12(b)(1) and 12(b)(6) (Docket Entry 15) are GRANTED.  Plaintiff's Federal Claims are DISMISSED for lack of subject matter jurisdiction.  Plaintiff's State Claims are DISMISSED WITHOUT PREJUDICE to refiling in the appropriate court.  The Clerk of the Court is directed to enter judgment consistent with this Memorandum and Order and to mark this case CLOSED.

                SO ORDERED.

                /s/ JOANNA SEYBERT
                Joanna Seybert, U.S.D.J.

Dated:    July   2  , 2015
          Central Islip, New York